24CA0914 Peo in Interest of GWT 11-21-2024 
 
COLORADO COURT OF APPEALS 
 
 
Court of Appeals No. 24CA0914 
Adams County District Court No. 22JV112 
Honorable Emily Lieberman, Judge 
 
 
The People of the State of Colorado, 
 
Appellee, 
 
In the Interest of G.W.T., L.W.T., and C.W.T., Children, 
 
And Concerning S.R.M., 
 
Appellant. 
 
 
JUDGMENT AFFIRMED 

 
Division VI 
Opinion by JUDGE BROWN 
Welling and Moultrie, JJ., concur 

 
NOT PUBLISHED PURSUANT TO C.A.R. 35(e) 
Announced November 21, 2024 
 
 
Heidi Miller, County Attorney, Deborah Kershner, Assistant County Attorney, 
Westminster, Colorado, for Appellee 

 
Josi McCauley, Guardian Ad Litem 
 
Robin Tieman, Office of Respondent Parentsâ Counsel, Boulder, Colorado, for 

Appellant 
 
 
 
 

1 
Â¶ 1 In this dependency and neglect action, S.R.M. (mother) 

appeals the judgment terminating her parent-child legal 
relationships with G.W.T., L.W.T., and C.W.T. (the children). We 
affirm. 
I. Background 

Â¶ 2 The Adams County Human Services Department (the 

Department) filed a petition in dependency and neglect, alleging 
concerns about the childrenâs exposure to domestic violence and 

substances, resulting in their basic needs not being met. The 
petition also alleged that the family had prior involvement with the 
Department, including one court-involved and two voluntary cases. 

The juvenile court adjudicated the children dependent and 
neglected and adopted a treatment plan for mother. 
Â¶ 3 Eight months after the petition was filed, the Department 

moved to terminate motherâs parental rights. Over the next year, 

the termination hearing was continued and reset at least five times. 

Almost two years after the petition was filed, the juvenile court 
terminated motherâs parental rights after a contested hearing.

1

 
 

1

 The childrenâs father confessed the motion to terminate parental 

rights and is not a party to this appeal. 

2 
II. Fit Within a Reasonable Time 

Â¶ 4 Mother contends that the juvenile court erred by finding she 

could not become fit within a reasonable time. We are not 
persuaded. 
A. Standard of Review and Applicable Law 

Â¶ 5 The juvenile court may terminate parental rights if it finds, by 

clear and convincing evidence, that (1) the child has been 
adjudicated dependent and neglected; (2) the parent has not 
complied with an appropriate, court-approved treatment plan or the 
plan has not been successful; (3) the parent is unfit; and (4) the 
parentâs conduct or condition is unlikely to change within a 
reasonable time. Â§ 19-3-604(1)(c), C.R.S. 2024; People in Interest of 

E.S., 2021 COA 79, Â¶ 10. 

Â¶ 6 An unfit parent is one whose conduct or condition renders 

them âunable or unwilling to give the child reasonable parental care 
to include, at a minimum, nurturing and safe parenting sufficiently 
adequate to meet the childâs physical, emotional, and mental health 

needs and conditions.â Â§ 19-3-604(2). In determining whether a 

parentâs conduct or condition is likely to change within a reasonable 
time, âthe court may consider whether any change has occurred 

3 
during the proceeding, the parentâs social history, and the chronic 
or long-term nature of the parentâs conduct or condition.â People in 

Interest of S.Z.S., 2022 COA 133, Â¶ 24. 

Â¶ 7 What constitutes a reasonable time is fact specific and must 

be determined by considering the physical, mental, and emotional 
conditions and needs of each child. Id. at Â¶ 25. A âreasonable 

timeâ is not an indefinite time. Id. And even when a parent has 

made recent progress on a treatment plan, the court is not required 
to give the parent additional time to comply. See id. at Â¶Â¶ 24-25. 
When, as here, a child is under six years old at the time the petition 
is filed, the action is subject to the expedited permanency planning 
provisions, and the court must consider the childâs need to be 

placed in a permanent home as expeditiously as possible. 
Â§Â§ 19-1-102(1.6), 19-1-123, C.R.S. 2024. 

Â¶ 8 Whether a juvenile court properly terminated parental rights 

presents a mixed question of law and fact because it involves 
application of the termination statute to evidentiary facts. People in 

Interest of A.M. v. T.M., 2021 CO 14, Â¶ 15. âWe review the juvenile 

courtâs findings of evidentiary fact â the raw, historical data 

underlying the controversy â for clear error and accept them if they 

4 
have record support.â People in Interest of S.R.N.J-S., 2020 COA 12, 
Â¶ 10. We review de novo the juvenile courtâs legal conclusions. See 

id.; People in Interest of A.S.L., 2022 COA 146, Â¶ 8. 

Â¶ 9 It is for the juvenile court, as the trier of fact, to determine the 

sufficiency, probative effect, and weight of the evidence and to 
assess witness credibility. People in Interest of A.J.L., 243 P.3d 244, 
249-50 (Colo. 2010). 
B. Analysis 

Â¶ 10 The juvenile court determined that mother was unfit based on 

her âlong standingâ substance dependence, domestic violence, and 
mental health concerns. The court found that mother was âeither 

unwilling or unable to address the protective concerns that gave 
rise to this matter.â 

Â¶ 11 The juvenile court also determined that mother could not 

become fit within a reasonable time because âthese children cannot 

wait any longer for permanency.â The court found that although 
âthere may have been enough to proceed to termination much 

earlier in the case,â mother was given âa considerable extension of 

time to work on . . . compliance with the treatment planâ but did 
not take advantage of the extensions given to her. The court noted 

5 
that âwe are two years in and . . . there is no indication that 

[mother] is at a place where she is ready or willing to do [the] 
trauma workâ needed so the children could be returned home. The 

court found that mother had not addressed the concerns that kept 
her from safely parenting and that â[u]nder no reasonable 
circumstances can the welfare of the children be served by a 
continuation of the parent-child legal relationship.â 
Â¶ 12 Mother contends that the juvenile court erred because (1) she 

complied with much of her treatment plan; (2) her prior involvement 
with the Department led to reunification; and (3) allowing her more 
time would not delay her childrenâs needs for permanency because 
they were not in potentially permanent homes. We consider, and 
reject, each contention in turn. 
1. Compliance with the Treatment Plan 

Â¶ 13 The record supports motherâs assertion that she complied with 

portions of her treatment plan, which included objectives requiring 
mother to engage in life skills services, apply for housing and 
employment, address issues of domestic violence, stabilize her 
mental health, address substance dependence, maintain and 
strengthen her bond with the children, comply with probation, and 

6 
refrain from further criminal activity. The caseworker testified that 
mother obtained housing with the assistance of a municipal court 
caseworker and resolved one of her probation cases. Mother also 
began treatment with at least three different providers to address 
substance dependence, domestic violence, and mental health 
concerns. 
Â¶ 14 But the record does not support motherâs other claims â 

specifically that she stayed in communication with the Department, 
engaged in intensive outpatient services through probation, 
provided clean drug screens, and addressed her substance 
dependence concerns. The caseworker testified that motherâs 

communication with her was âintermittent.â There was no evidence 

that mother stayed engaged in any intensive outpatient services. 

The caseworker testified that mother was not compliant with her 
substance testing through probation. Although mother reported 
recent participation in a new treatment program, the caseworker 
was unable to learn anything about the program even after 
connecting with the programâs self-identified âCEO.â That person 

told the caseworker that mother was providing clean UAs, but they 
did not respond to the caseworkerâs request for copies of the 

7 
results, so the caseworker did not have any evidence that mother 
was sober. And the caseworker testified she did not know whether 
the program satisfied motherâs treatment plan requirements 

because the CEO did not tell her what treatment needs they were 
addressing with mother or how often. 
Â¶ 15 In any event, the caseworker testified that motherâs failure to 

address the key components of her treatment plan â domestic 
violence, mental health, and her relationships with the children â 
continued to raise child protection concerns. While it is true that 
mother did not have any new domestic violence charges, the 
caseworker testified that domestic violence concerns had not been 
mitigated. The caseworker also testified that there were âno 

behavioral or observable changesâ to demonstrate success through 

any of the treatment programs that mother attempted. 
Â¶ 16 The juvenile court found that these unaddressed concerns, 

particularly as related to motherâs mental health, impacted her 

fitness and relationship with the children âsignificantly.â The court 
found that âthere are concerns that when [mother] is dysregulated, 

she becomes emotionally accusatory towards the children and sheâs 

unable to meet their needs consistently when she canât consistently 

8 
regulate herself.â The court found that motherâs behaviors during 
family time were âparticularly concerning for these particular 

childrenâ because of their heightened needs. 

Â¶ 17 The record supports these findings. The caseworker testified 

that mother was on the âhigh riskâ track for family time because 

she was unable to regulate during family time and made threats 
that placed the children, staff, and herself in danger. The âhigh 

riskâ track required law enforcement or security personnel presence 
at family time. The caseworker testified that all the children had 
special needs and generally were ânot able to regulate without 
consistent support, adult intervention, and having more than one 
adult to support them.â The caseworker testified that mother was 

not able to provide an emotionally safe environment for any of the 
children. 
Â¶ 18 The family time supervisor testified that she had to intervene 

in family time multiple times. Although there were times when 
mother could regulate herself and help the children regulate, other 
times she blamed the children for the Departmentâs involvement, 

argued with staff, targeted the children, and contributed to the 
childrenâs dysregulation. During one notable family time session, 

9 
while the children were present, mother argued that she should be 
able to hit one of the children as a punishment for not listening to 
her. 
Â¶ 19 The record belies motherâs assertion that her mental health 

concerns were limited to her worries about the impending 
termination of parental rights hearing. Independent of the 
Departmentâs involvement, probation saw the need for mental 
health services and attempted to assist mother with getting an 
evaluation and treatment, but she did not follow through. Motherâs 

expert at the termination hearing testified that she had significant 
childhood adversity and that her post-traumatic stress disorder had 
a âsignificant effectâ on her everyday life. Although motherâs expert 
discussed her trauma responses at some length, he never suggested 
that motherâs reactions were caused by or limited to the stress of 

the pending termination hearing. 
Â¶ 20 Given this record, we cannot conclude that the juvenile court 

erred by finding that mother did not successfully comply with her 
treatment plan so as to render her a fit parent. 

10 
2. Prior Successful Reunification 

Â¶ 21 The juvenile court acknowledged that mother was a 

respondent in an earlier dependency and neglect action where she 
was able to engage and successfully complete her treatment plan. 

But the court noted that âthere was a theme that arose through 
some of the testimony that [mother] doesnât believe she needs 

services and everything would be fine if the children were just 
returned.â The court wondered if mother was unwilling to engage 

with the core elements of her treatment plan because of her 
âdisagreement that this case should have ever been opened.â 

Â¶ 22 In any event, mother does not allege that the services provided 

during this case were deficient or otherwise explain why her earlier 
successful reunification should have led the court to grant her more 
time during this case. And as the juvenile court noted, prior 
dependency and neglect cases, even those resulting in reunification, 
must be considered in âdetermining unfitness.â Â§ 19-3-604(2)(i). 
3. Impact of More Time on Permanency 

Â¶ 23 Finally, mother contends that giving her more time would not 

have delayed the childrenâs permanency. But the juvenile court 

11 
found, with record support, that mother had already been given 
more time to engage with her treatment plan. 
Â¶ 24 Mother had more than a year between when the Department 

moved for termination and when the court held the hearing. First, 
the caseworker advocated for mother to have more time to work on 

her treatment plan. The hearing was continued again three months 
later for the same reason. The hearing was then continued two 
more times because new counsel was appointed and a final time to 
allow father to appear in person. 
Â¶ 25 Mother benefitted from each of these continuances, three of 

which occurred after motherâs expert completed an evaluation 
giving specific recommendations for motherâs engagement and 

success. At termination, the caseworker testified that she 

previously âasked the county attorney to withdraw her motion [for 
termination because she] . . . believed [mother] had the capacity to 
succeed . . . [but] itâs been ten months and thereâs been no 

progress.â As the court found, âit doesnât appear that a whole 

bunch at all was doneâ with the extra time given to mother. 
Â¶ 26 The juvenile court also found that âthese children cannot wait 

any longer for permanency.â The record supports this finding. The 

12 
caseworker testified that she was concerned about the childrenâs 

mental and emotional health if they âcontinue[d] to languish in 
foster care.â The caseworker testified that the children were 

âindicating that they want to know where theyâre going to beâ and 

opined that the children needed the permanency of adoption. At 
least one of the children was struggling with attending family time 
and asked not to be made to go. 
Â¶ 27 Mother contends that because the children were not in 

permanent placements at the time of termination, their need for 
permanency was not resolved with the termination of her parental 
rights. But the record suggests otherwise. The caseworker testified 

that G.W.T. was in a potentially permanent home and that the other 
children were going to transition to that home shortly after the 
termination hearing. The record also suggests that termination of 
motherâs parental rights would make permanent placement of the 

children more viable. 
Â¶ 28 Furthermore, a childâs placement is a different matter than a 

childâs need for permanency. See A.M., Â¶ 32 (a less drastic 

alternative to termination must be rejected when termination is in 
the childâs best interests); see also People in Interest of T.E.M., 124 

13 
P.3d 905, 910 (Colo. App. 2005) (â[P]ermanent placement with a 
family member is dependent on the childâs best interests, as is the 
determination whether to order permanent placement as an 
alternative to termination . . . [which] may not be appropriate when 
it does not provide adequate permanence or otherwise meet the 
childâs needs.â) (citations omitted). This is particularly true when, 

as was the case here, the juvenile court finds that the statutory 
criteria for termination have been met, an ongoing relationship with 
a parent is not beneficial to the children, and termination is in the 
childrenâs best interests. See A.M., Â¶ 36 (âThe Childrenâs Code does 

not support the conclusion that âa parent-child relationship should 
be continued when it has been shown by clear and convincing 
evidence that . . . the parent is unfit, an appropriate treatment plan 
has been tried without success, and the conduct or condition of the 
parent is unlikely to change within a reasonable time.ââ (quoting 
People in Interest of A.M.D., 648 P.2d 625, 637-38 (Colo. 1982))). 

Â¶ 29 Thus, we conclude that the juvenile court did not err by 

declining to grant mother more time to comply with her treatment 
plan or by concluding that termination was in the childrenâs best 

14 
interests even though they may not have been in permanent 
placements. 

III. Disposition 

Â¶ 30 The judgment is affirmed. 

JUDGE WELLING and JUDGE MOULTRIE concur.