24CA0918 Peo in Interest of LR 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0918
Mesa County District Court No. 21JV247
Honorable Jeremy Chaffin, Judge

The People of the State of Colorado,

Appellee,

In the Interest of L.R., a Child,

and Concerning B.R.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney,
Grand Junction, Colorado, for Appellee

Jenna Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant

¶ 1    In this dependency and neglect proceeding, B.R. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with L.R. (the child).  We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services filed a petition in dependency and neglect regarding the then nine-month-old child and several of her half-siblings.  The petition alleged that mother had longstanding substance abuse and mental health problems that culminated in a domestic violence incident involving one of the children's fathers and his parents.  The Department initially placed the child with a family friend, J.H., but moved her to a foster home after she sustained unexplained injuries to her forehead and chin.

¶ 3    The juvenile court accepted mother's admission to the petition, adjudicated the child dependent and neglected, and adopted a treatment plan requiring that she, among other things, (1) complete mental health and substance use evaluations and engage in recommended treatment; (2) attend a domestic violence assessment and follow all reasonable recommendations of the provider; (3) complete a capacity to parent evaluation; (4) engage in life skills

services; and (5) consistently attend family time. About six months after the Department filed the petition, mother was arrested for her involvement in a burglary resulting in a homicide and was incarcerated throughout the remainder of the proceeding. Mother pleaded guilty and was sentenced to six years in Community Corrections with a ten year suspended sentence to the Department of Corrections.

¶ 4 The Department moved to terminate mother's parent-child legal relationship with the child. After a hearing, the juvenile court granted the motion and terminated mother's parental rights.

¶ 5 Mother appeals, contending that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify the family because it did not consistently provide family time while mother was incarcerated. She also asserts that the court erred when it found she was unlikely to become fit within a reasonable time and there was no less drastic alternative to termination.

## II. Statutory Criteria

¶ 6 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been

adjudicated dependent or neglected; (2) the parent did not comply with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

### III. Reasonable Efforts

#### A. Applicable Law and Standard of Review

¶ 7 The Department must make reasonable efforts to rehabilitate a parent and reunify the family whenever appropriate. § 19-3-100.5(1), C.R.S. 2024; *see* § 19-3-604(2)(h). The reasonable efforts standard is satisfied if services are provided in accordance with section 19-3-208, C.R.S. 2024, which includes conducting family assessments, developing a treatment plan, and providing information and referrals for public and private assistance. §§ 19-1-103(114), 19-3-208(2)(b), C.R.S. 2024; *People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo. App. 2006).

¶ 8 Under section 19-3-208(2)(b), family time for parents with children in out-of-home placements must be provided as determined necessary and appropriate by a case assessment and

the individual treatment plan. When determining whether family time is necessary and appropriate, the health and safety of the child are the paramount concerns. §§ 19-1-103(114), 19-3-100.5(2). Questions about the child's health and safety, like those concerning a child's best interests, are matters entrusted to the sound discretion of the juvenile court. *People in Interest of K.B.*, 2016 COA 21, ¶ 43.

¶ 9 Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error but review de novo its legal determinations. *Id.*

## B. Analysis

¶ 10 The juvenile court determined that the Department made reasonable efforts. The court found that the Department offered everything it could, including family time, and mother participated, but despite those efforts had no meaningful relationship with the child. The record supports the court's findings.

¶ 11 The caseworker testified that the Mesa County Detention Facility, where mother was incarcerated for the majority of the case,

provided a limited number of family time opportunities, but that mother was able to have video visits. The caseworker and the child's placement provider testified that mother had family time via video once a week from the jail for about twenty-five minutes.

¶ 12    The caseworker testified that after mother was sentenced to Community Corrections, the caseworker did not know where she was housed for about a six-week period. The caseworker worked to restart visits once mother began serving her Community Corrections sentence and the caseworker had located her. However, the caseworker needed a new authorization form to begin family time. She mailed the form to mother's Community Corrections caseworker, but it never reached mother, so the caseworker brought it to an in-person visit she supervised just days before the termination hearing.

¶ 13    Mother asserts that the Department did not investigate whether she could have phone calls or in-person family time with her child while she was incarcerated. But nothing in the record indicates that mother asked for phone calls or in-person family time. Nor does mother argue that such visits would have been in the child's best interests. The caseworker testified that telephone

visits for a child L.R.'s age would have been very difficult and explained that even video visits were a challenge. And the caseworker testified that in-person visits are not usually recommended for young children because it can be very confusing and because they do not understand the rules or expectations of being in a jail.

¶ 14 In sum, the record supports that, although sometimes sporadic, the Department made reasonable efforts to ensure that mother had family time with the child. Nothing in the record suggests that the Department unduly delayed visitation or failed to provide family time given the challenges it faced because of mother's incarceration.

## IV. Additional Time

### A. Applicable Law and Standard of Review

¶ 15 An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2). When determining whether a parent's conduct or condition is likely to change within a

reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 16      What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. A "reasonable time" is not an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶¶ 24-25. When, as here, a child is under six years old at the time the petition is filed, the action is subject to the expedited permanency planning (EPP) provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 17      Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data

underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review de novo the juvenile court's legal conclusions. *See id.*; *A.S.L.*, ¶ 8.

¶ 18 It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B. Analysis

¶ 19 The juvenile court found that mother would not become fit to parent the child in a reasonable time. It noted mother's timeline — where she estimated she would be on non-residential status through Community Corrections and thus able to have the child live with her in a matter of months. But it did not find this timeline realistic and noted that no evidence suggested she would be able to maintain sobriety or her mental health outside of a custodial setting. The court reiterated that the proceeding was subject to the EPP provisions and that given the child's young age, a reasonable time for mother to become fit had likely already passed. The record supports the court's findings.

¶ 20    Mother and the caseworker testified that at the time of the hearing she was in residential status through Community Corrections and had to complete four phases before becoming eligible for non-residential status.  During the residential phases of Community Corrections, mother was not able to have her children live with her.  After mother moved to non-residential status, she would first have to secure housing and she did not know the process for receiving permission to have any children live with her.  Mother testified that she had no leads on housing and had not submitted any applications.

¶ 21    The caseworker expressed concern about mother having the child with her once she progressed to non-residential status because if she did not comply with all of her conditions, she could be immediately regressed to custodial status, leaving the child without a parent.  Moreover, the caseworker testified that mother had not completed a parenting class or domestic violence treatment, which she would need to do before the child could live with her.  And, according to the caseworker, although mother had taken some classes related to substance use and other topics while incarcerated, they were generic and not the case specific treatment

needed to reunify with the child. Moreover, by the time of the termination hearing, the child was three years old and had spent more than two years of her life in foster care.

¶ 22     Based on this record, and considering the expedited provisions applicable to this case, the juvenile court did not err when it found mother was unlikely to become fit in a reasonable time.

## V.     Less Drastic Alternatives

### A.     Applicable Law and Standard of Review

¶ 23     Implicit in the statutory criteria for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). When considering less drastic alternatives to termination, the court must give primary consideration to the child's physical, mental, emotional conditions and needs. § 19-3-604(3); *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007). A juvenile court may consider and weigh various factors when determining the viability of a less drastic alternative, including whether an ongoing relationship with a parent would be beneficial or detrimental to the child, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38, and whether permanent placement with a relative

or other person provides adequate permanency and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 24 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interest, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32.

¶ 25 When the juvenile court considers the availability of a less drastic alternative and still determines that termination of a parent's rights would be in the child's best interests, we are bound to affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 26 Mother asserts that the juvenile court erred when it found no available less drastic alternative because it could have ordered an allocation of parental responsibilities (APR) with the child's foster family or with J.H. We are not persuaded.

¶ 27    The juvenile court found that no less drastic alternative was available.  It found that a guardianship or an APR with the foster parents was not appropriate and that the child must be in a permanent home as expeditiously as possible based on the EPP provisions.  It further found that the child's permanency could only be secured by adoption.

¶ 28    Mother argues that the court erred because no one discussed an APR with foster parents, and they had "no idea" what an APR would look like.  We agree that the child's foster parents testified that the Department had not discussed an APR with respect to this child.  Even so, any lack of discussion with the Department does not establish that the foster parents were an available less drastic alternative.  The foster mother testified that she believed the child needed to be adopted and that an APR would be problematic because mother could later move to modify the arrangement and that would not provide permanency for the child.  She also noted that such a future change would be confusing because the child did not recognize mother as her parent.  Additionally, the caseworker, who testified as an expert in child protection and child welfare, testified that an APR would not be appropriate for the child given

her young age, that she had spent most of her life with foster parents, and because she did not have a relationship with mother.

¶ 29 Mother also argues that the court could have ordered an APR or guardianship with J.H. But the record does not support this assertion.

¶ 30 The caseworker testified that the child had been removed from J.H.'s home after she sustained unexplained bruising to her head and chin. The caseworker testified that she suggested that J.H. work with the Department to address safety concerns, but J.H. did not engage with the Department and the safety concerns were "very much still in play" at the time of the termination hearing. Moreover, at the time of the termination hearing, J.H. had nine children in her home, far over the limit the Department allows when placing a child.

¶ 31 The juvenile court credited this evidence and found that J.H. "although perhaps well meaning, does not provide . . . a suitable home" for the child. It is not within the province of this court to reweigh this evidence on appeal. *A.J.L.*, 243 P.3d at 256 (court of appeals may not substitute its opinion for that of the fact finder regarding credibility of witnesses, and the weight, sufficiency, and

probative value of the evidence).  And because the record supports the juvenile court's findings, we are bound to affirm its determination that there was no less drastic alternative to termination.  *B.H.*, ¶ 80.

## VI.   Disposition

¶ 32    We affirm the judgment.

JUDGE FREYRE and JUDGE LUM concur.