24CA0640 Peo in Interest of JEB 01-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0640
El Paso County District Court No. 21JV182
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.E.B., a Child,

and Concerning R.D.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

---

Kenneth Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    R.D.S. (father) appeals the judgment terminating his parent-child legal relationship with J.E.B. (the child).  We affirm.

## I.    Background

¶ 2    In February 2021, the El Paso County Department of Human Services (Department) filed a petition in dependency and neglect, alleging, among other things, that father and mother were involved in a domestic violence dispute, which resulted in father's arrest. After a bench trial, the juvenile court adjudicated the child dependent and neglected.  The court then adopted a treatment plan for father that required him to (1) communicate with the Department; (2) develop parental protective capacity; (3) provide a safe and stable home; (4) address domestic violence concerns; and (5) engage in family time.

¶ 3    In November 2023, the Department moved to terminate father's parental rights.  The juvenile court held an evidentiary hearing in February 2024.  After hearing the evidence, the court terminated father's parent-child legal relationship with the child.

## II.    Termination of Parental Rights

¶ 4    Father asserts that the juvenile court erred by terminating his parental rights because the Department failed to establish, by clear

1

and convincing evidence, that (1) his treatment plan was appropriate and (2) the Department made reasonable efforts to rehabilitate him. For the reasons described below, we discern no reversible error.

### A. Applicable Law and Standard of Review

¶ 5 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6 In determining fitness under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite the parent with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208. § 19-1-103(114). In turn, section 19-3-208

requires departments to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b).

¶ 7    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 8    When a parent in a dependency and neglect case has a qualifying disability under the Americans with Disabilities Act of 1990 (ADA), the juvenile court must also consider whether reasonable accommodations were made for the parent's disability when finding that (1) a parent's treatment plan was appropriate and (2) the department made reasonable efforts. *People in Interest of S.K.*, 2019 COA 36, ¶ 34; § 19-3-208(2)(g) (noting that services provided by a department must comply with the ADA). But the ADA is not a defense to termination, *People in Interest of T.B.*, 12 P.3d 1221, 1223 (Colo. App. 2000), and "the requirement to make reasonable accommodations [does not] lower the standards for parents with disabilities," *S.K.*, ¶ 36.

¶ 9    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the evidentiary facts to the termination statute. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 8 (noting that a consideration of whether a department of human services satisfied its obligation to make reasonable efforts also presents a mixed question of fact

4

and law).  We review the court's factual findings for clear error, but we review de novo the court's legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B.    ADA

¶ 10    Father contends that the juvenile court and the Department failed to comply with the ADA.  But for the reasons we explain below, the issue was not before the juvenile court, and we decline to address it for the first time on appeal.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[A]ppellate courts review only issues presented to and ruled on by the lower court.").

¶ 11    First, father did not alert either the Department or the juvenile court that he had a qualifying disability under the ADA before the termination hearing.  To be sure, a parent is not necessarily required to raise an ADA claim before the termination hearing to preserve it for our review.  *See People in Interest of C.Z.*, 2015 COA 87, ¶ 9 (addressing an ADA claim raised for the first time in closing argument at the termination hearing).  But by failing to raise this issue during the case, the juvenile court did not have an opportunity to determine whether father had a disability, and if he

5

did, to order the Department to provide him with reasonable accommodations. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶¶ 16-17. As a result, we do not have a record of whether (1) father had a disability; (2) any specifics about his disability; (3) what accommodations he needed; and (4) whether those accommodations were reasonable. *See id.* at ¶ 21 (noting that whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that, if disputed, the juvenile court must resolve in the first instance); *see also S.K.*, ¶ 35 ("What constitutes a reasonable accommodation will be based on an individual assessment.").

¶ 12 Second, father did not ask the juvenile court to deny the termination motion because he had a disability, his treatment plan was inappropriate, or the Department did not provide reasonable accommodations for his disability. *See S.Z.S.*, ¶ 18 (To preserve an ADA claim, the parent should "present the court with an adequate opportunity to make findings of fact and legal conclusions on the ADA issue"). Although father concedes that he did not raise the ADA at the termination hearing, he now maintains that he was

unable to do so because he did not have the opportunity to make an opening statement or closing argument. Yet, counsel never requested to make an opening statement or closing argument. Nor did he ask for a continuance to make an oral closing or request the opportunity to file a written closing argument. And although father's counsel challenged the reasonableness of the Department's efforts during cross-examination, none of these questions specifically raised the ADA or suggested that father had a disability.

¶ 13 Third, even though father did not alert the Department or the juvenile court that he had a disability, father now contends that the information available to the Department and the court provided them with "constructive notice" of his disability. *See S.K.*, ¶ 22 (noting that, if a disability is "obvious," a department may be required to accommodate the disability, even if the parent does not inform the department about the disability). Specifically, father maintains that the "fact [that he was found incompetent to proceed in his criminal cases] was tantamount to conclusive evidence that [he] suffered from mental-health related disabilities." We are not persuaded for the following reasons:

- Even though father was incompetent to proceed for a few months during the criminal case, he was eventually declared competent to proceed. *See* § 16-8.5-101(5), C.R.S. 2024 (If a person is competent to proceed, the person "does not have a mental disability.").

- There is no equivalent procedure in dependency and neglect proceedings for a person who is incompetent to proceed. Rather, if a person has trouble understanding the proceedings, counsel should request a guardian ad litem (GAL). *See* § 19-1-111(2)(c), C.R.S. 2024 (allowing a court to appoint a GAL for a parent "who has been determined to have a behavioral or mental health disorder"). In this case, father's counsel had an opportunity to request a GAL but declined to do so.

- Before the termination hearing, father's counsel reported to the court that, following father's completion of the restoration program in his criminal case, father was "stable mentally." The court also advised father on the

termination motion at that time, and father indicated that he understood the proceeding.

Given all this, we are not convinced that the Department and the juvenile court had "constructive notice" that father had a disability under the ADA and needed accommodations.

¶ 14 Finally, father urges us to address his unpreserved appellate argument under the miscarriage of justice exception to the preservation rule. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14 (noting that, in very limited situations, an appellate court may address unpreserved issues in dependency and neglect cases to avoid a miscarriage of justice). For reasons we explain below in addressing father's ineffective assistance of counsel claim, counsel's failure to raise the ADA in the juvenile court did not prejudice father. Thus, our decision to forgo review of the ADA claim will not result in a miscarriage of justice.

## C. Reasonable Efforts

¶ 15 Father also contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate him and reunify him with the child. We discern no reversible error.

¶ 16    As noted, the main protective issue that brought this case to the Department's attention was domestic violence.  Father's treatment plan required him to, among other things, address his domestic violence conduct and engage in family time.  Therefore, at a minimum, the Department needed to provide father with a domestic violence evaluation (and treatment if recommended) and supervised family time services.  The record does not indicate that the Department ultimately provided either of these services to father.

¶ 17    Nevertheless, we discern no reversible error in the juvenile court's conclusion that the Department made reasonable efforts to provide visitation and other services.  The juvenile court found that the Department "tried to get services" set up for father but it was "difficult" because "he was in and out of custody."  Each time father was released, the Department made referrals for father in the community, but then he would go back into custody.  Ultimately, the court concluded that this cycle, not the Department's lack of efforts, resulted in father's inability to engage in services.

¶ 18    The record supports these findings.  The caseworkers'
supervisor testified that the Department could not provide services
for father at the jail during the early part of the case because of
COVID-19 restrictions.  In addition, a protection order prohibited
father from having contact with the child.  After the protection order
was vacated, the child's therapist recommended that father not visit
with the child for a period of time that extended into 2023.
According to the supervisor, when father was released from
custody, he asked about visits, "but by the time [the Department]
got [visits] set up, he was back in [custody]."  And then, when he
was in custody, the Department "would get ready to have the video
visits, and [father] would get released."

¶ 19    As for other services, the supervisor said that after COVID-19
restrictions were lifted, there were service providers contracted by
the Department to work with father.  But he was "bouncing in and
out [of custody]" and because "he wasn't staying in one place long
enough," the Department could not get any services set up for him.
Additionally, she explained that the Department could not contact

11

father or provide him services while he was in the state hospital in Pueblo.

¶ 20    In sum, the record shows the Department attempted to provide services to father, but his continued criminal activity and incarceration prevented him from accessing those services. Because the record supports the court's findings that these complications, not the Department's lack of efforts, prevented father from becoming a fit parent, we discern no reversible error.

### III.   Ineffective Assistance of Counsel

¶ 21    Finally, father argues that his counsel provided ineffective assistance by failing to notify the Department and the court about his disability and request ADA accommodations or, in the alternative, to raise a defense at the termination hearing based on the Department's failure to accommodate his disability. We discern no basis for a remand.

¶ 22    A parent has a statutory right to appointed counsel in a termination proceeding. § 19-3-202(1), C.R.S. 2024; *see also* §§ 19-1-105(2), 19-3-602(2), C.R.S. 2024. A parent's statutory right to counsel includes the right to effective assistance of counsel. *See*

12

*A.R. v. D.R.*, 2020 CO 10, ¶ 47; *see also People in Interest of C.H.*, 166 P.3d 288, 290 (Colo. App. 2007).

¶ 23    In evaluating a claim of ineffective assistance of counsel in termination proceedings, we apply the same test that we would when evaluating an ineffective assistance of counsel claim in a criminal case. *See A.R.*, ¶¶ 48, 60. Under this test, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at ¶ 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 24    Under this approach, an appellate court must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. However, if the parent's allegations lack sufficient specificity, the ineffective assistance claim may be summarily denied. *Id.*

¶ 25    Even assuming, without deciding, that counsel's performance was deficient, we conclude that father has failed to sufficiently allege prejudice. Father asserts that, if his counsel had requested his records from the state hospital and provided them to the Department, then the Department would have provided him with a mental health evaluation and treatment. And if he had treatment, then he could have become a fit parent in a reasonable time. But the record shows that starting in October 2022, the Department intended to "refer [father for] a . . . neuropsychological evaluation" but could not because he was incarcerated, and it could not "locate providers who c[ould] go to" the county jail. Father was released from custody during the summer of 2023, but before the caseworker could find him, she learned that he had "picked up new charges" and had "been detained." He remained in custody for the rest of the proceedings.

¶ 26    Thus, the record shows that father did not participate in any mental health services because of the frequency with which he went into and out of custody during the case. In light of this evidence, we conclude that even if counsel had raised the ADA so that father's

14

treatment plan was modified and the Department made referrals for a mental health evaluation and treatment, the outcome of the proceeding would have likely been the same.

¶ 27     Nor are we convinced that, had father's counsel raised the ADA for the first time at the termination hearing, the outcome of the termination proceeding would have been different because (1) the ADA cannot be raised as a defense to the termination of parental rights, *T.B.*, 12 P.3d at 1223; and (2) "[a] parent who waits until the eleventh hour to request a modification under the ADA may thoroughly undermine h[is] ability to establish that such modification is reasonable, particularly once the best interests of the child are taken into account," *S.Z.S.*, ¶ 16 (quoting *State in Interest of K.C.*, 2015 UT 92, ¶ 27).

¶ 28     Accordingly, we conclude that father has not raised sufficiently specific and compelling allegations to constitute a prima facie showing of ineffective assistance of counsel.  *See A.R.*, ¶ 63; *see also People v. Sherman*, 172 P.3d 911, 914 (Colo. App. 2006) (noting that a claim that is too speculative will not satisfy the prejudice prong).  Thus, we will not disturb the termination judgment.

## IV. Disposition

¶ 29    The judgment is affirmed.

JUDGE YUN and JUDGE KUHN concur.