24CA0953 Peo in Interest of AJS 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0953
City and County of Denver Juvenile Court No. 22JV30488
Honorable Elizabeth J. McCarthy, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.J.S., a Child,

and Concerning L.N.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Kerry Tipper, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Joel M. Pratt, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dependency and neglect proceeding, L.N.S. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.J.S. (the child).  We affirm.

## I.     Background

¶ 2     The Denver Human Services Department filed a petition in dependency and neglect regarding the one-year-old child and his two-year-old half-sibling, K.G.S.  The petition alleged that mother had reported that the child's father, D.J.S., had sexually assaulted K.G.S. and would not leave her apartment.  Law enforcement officers responded and found mother erratic and escalated.  An existing protective order prohibited contact between mother and D.J.S.  The home smelled of urine and there were feces smeared on the children's cribs, their feet, and the walls.  And the petition also alleged that mother had disclosed recent methamphetamine use.  The petition further alleged that mother had a previous dependency and neglect proceeding involving K.G.S.

¶ 3     The juvenile court accepted mother's no-fault admission to the petition and adjudicated the child dependent and neglected.  The court adopted a treatment plan for mother requiring that she, among other things, (1) complete a psychological evaluation and

1

follow its recommendations including taking mental health medications as prescribed; (2) participate in life skills services; (3) complete a substance abuse evaluation and engage in recommended treatment; (4) comply with outstanding orders from criminal cases and refrain from engaging in further criminal activity; and (5) engage in regular family time.

¶ 4        About thirteen months after the Department filed the petition, the Department moved to terminate the parent-child legal relationship between the child and both mother and D.J.S.  Shortly thereafter, mother was arrested and charged with the attempted murder of her mother, among other offenses.  Mother remained incarcerated awaiting trial at the time of the termination hearing.  Following a hearing, the juvenile court terminated mother's parent-child legal relationship with the child.[1]

## II.    Termination Criteria and Standard of Review

¶ 5        A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent did not comply

---

[1] D.J.S. died before the termination hearing.

with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 6     Where resolution of an issue requires application of the termination statute to evidentiary facts, it presents a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's factual findings for clear error. C.R.C.P. 52. The credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the juvenile court's province. *A.M.*, ¶ 15. Determining the proper legal standard to be applied to a case and applying that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

### III.    Americans with Disabilities Act

¶ 7     Mother argues that the juvenile court erred by terminating her parental rights because the Department did not provide reasonable

accommodations for her disability under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213.

¶ 8    Specifically, mother argues that the Department did not accommodate her "significant mental health concerns" because it purportedly failed to evaluate her capacity so that it could determine how it could provide effective services and, instead, only provided referrals to services which mother could not access on her own.

¶ 9    Mother concedes that she did not raise the question of whether she was an individual with a qualified disability or identify any reasonable accommodations required by the ADA before the juvenile court.  We are therefore not inclined to address mother's assertion because a parent cannot raise noncompliance with the ADA for the first time on appeal.  *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 18; *see also People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[A]ppellate courts review only issues presented to and ruled on by the lower court.").

¶ 10    She nonetheless urges us to address her unpreserved assertion that the ADA applied to her because failure to do so would result in a miscarriage of justice.  *See People in Interest of E.S.*,

2021 COA 79, ¶ 14. But we decline to do so because we would have to make factual findings about whether mother had a "qualified disability" under the ADA and about not only what reasonable accommodations mother was entitled to, but whether the Department had provided those reasonable accommodations. *See S.Z.S.*, ¶ 21 ("[B]ecause mother never raised the ADA issue . . . either before or during the termination hearing, the juvenile court didn't make any specific findings about the applicability of the ADA for us to review."); *People in Interest of S.K.*, 2019 COA 36, ¶ 21 n.2 (noting that whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that a juvenile court must resolve).

## IV. Reasonable Efforts

¶ 11 Although intertwined with her ADA argument, mother also argues separately that the Department failed to make reasonable efforts because it did not provide her a psychological evaluation. She also asserts that the Department did not make reasonable efforts to arrange family time with the child after her incarceration. We are not persuaded.

## A.    Applicable Law

¶ 12    When a court decides whether a parent is unfit or whether her conduct or condition will change, the court must evaluate whether the Department's reasonable efforts have been unable to rehabilitate her.  § 19-3-604(2)(h); *People in Interest of S.N-V.*, 300 P3d 911, 915 (Colo. App. 2011).  "'Reasonable efforts' . . . means the exercise of diligence and care . . . for children who are in out-of-home placement . . . ."  § 19-1-103(114), C.R.S. 2024.

¶ 13    The Department makes reasonable efforts if services are provided in accordance with section 19-3-208, C.R.S. 2024.  *See People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).  Such reasonable efforts include screening, assessments, home-based family and crisis counseling, information and referral services to available public and private assistance resources, visitation services for parents with children in out-of-home placement, and placement services including foster care and emergency shelter.  § 19-3-208(2)(b).  Additional services should be made available if they are determined to be necessary and appropriate by the case plan and adequate funding exists.  § 19-3-208(2)(d).  Examples of these additional efforts include providing transportation to required

services when other transportation is not available, mental health services, and drug and alcohol treatment services. *Id.*

¶ 14 The parent is responsible for using those services to obtain the assistance needed to comply with the treatment plan's requirements. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

### B. Analysis

¶ 15 With respect to the psychological evaluation, the caseworker testified that the Department had concerns about mother's mental health and that mother's treatment plan included a requirement that she complete a psychological evaluation because of those concerns. The Department placed a referral and the provider agreed to perform the evaluation, but mother needed ninety days of sobriety to ensure reliable results. When mother reported to the caseworker that she was sober, the caseworker asked for a hair sample to verify that. Mother declined. Mother also did not establish ninety days of sobriety by ongoing urinalysis testing.

¶ 16 On appeal, mother does not assert that the ninety-day sobriety requirement was unreasonable or amounted to a lack of reasonable efforts. She simply asserts that the Department did not perform a

psychological evaluation and, accordingly, it did not know what reasonable efforts she needed. But it is the parent's responsibility to ensure compliance with the treatment plan. *Id.* at 1285. Mother does not explain what the Department could or should have done when it was her own lack of sobriety that prevented the psychological evaluation from being performed.

¶ 17 That is not to say the Department stopped making reasonable efforts when mother could not establish sobriety. Instead, it referred mother for a substance dependence evaluation, which took her a year to complete even with the assistance of "more intense hours" and a "higher level" of services from a life skills professional. The evaluation recommended intensive outpatient treatment, and the Department was in the process of arranging such treatment, and even discussed a possible higher level of care, when mother was incarcerated. Moreover, the caseworker testified that mother's life skills worker "knew [mother] needed more assistance" — although she did not identify the basis for this belief — and therefore mother received additional help "to get her places" and to "help her schedule things."

¶ 18    Lastly, mother argues that the Department failed to make reasonable efforts to ensure that she maintained family time once she was incarcerated.  The caseworker testified that she reached out to the facility where mother was incarcerated, and it informed her that it did not accommodate in-person visits.  Contact with inmates had to be through a specific application and phone calls.  The caseworker put money in mother's account so she could make outgoing calls to the Department.  But because she could not receive calls, the caseworker testified, arranging a supervised phone visit with the child would have been difficult.  Although the caseworker acknowledged that she "could have" supervised a phone visit by being in the same room with the child and waiting for mother to place a phone call, nothing suggests that mother requested family time by phone or that such an arrangement would have been appropriate given the child's issues with delayed speech.  And, at the time of the termination hearing, mother testified that her phone privileges had been suspended.

¶ 19    Moreover, given mother's lack of engagement with the child — she had attended only six visits in thirteen months before her

incarceration — we cannot say that the Department failed to engage in reasonable efforts with respect to family time.

## V. Less Drastic Alternatives

¶ 20    Mother also asserts that the juvenile court erred when it found no available less drastic alternative to termination. We disagree.

### A. Applicable Law

¶ 21    The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. When considering less drastic alternatives, the court bases its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 22    Ultimately, for a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we

must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B. Analysis

¶ 23 The court found that no individuals could take the child pursuant to an allocation of parental responsibilities (APR). The court also found it was in the child's best interest to have the permanency that only adoption could provide. Accordingly, the court determined that there was no less drastic alternative to termination. These findings have support in the record.

¶ 24 The caseworker testified that the parents did not identify any possible placements. Therefore, the Department conducted a search and the caseworker talked to paternal grandmother about placement, but she was not willing to take the child. The caseworker also talked to D.J.S. about maternal grandfather, but D.J.S. explained that maternal grandfather was not able to take care of a child. The caseworker also considered S.S.O., the child's sibling's father, but did not believe he could take care of two children and was struggling just to have K.G.S. returned to his care.

¶ 25    The caseworker further testified that termination was in the child's best interests because he had been in out-of-home placement for two years, was only three years old, and needed permanency because of his young age. She testified that the child had some additional needs requiring ongoing therapy and that his current foster home was a potentially permanent home. And she testified that the child had no relationship with mother.

¶ 26    Mother asserts that the caseworker's investigation into maternal grandfather and S.S.O. was inadequate and, accordingly the juvenile court did not have enough information to make a decision about whether a less drastic alternative was available. And she contends that the court erred when it found the foster family "only wanted adoption" when the caseworker testified only that they "preferred" adoption. But mother's argument overlooks the court's factual finding that it was in the child's best interests that mother's rights be terminated because he needed the permanency that only adoption could provide. In other words, even if the Department had thoroughly investigated multiple suitable options willing to take placement of the child, an APR was not in the child's best interests.

Because the record supports this finding, we may not disturb it. *Id.* at ¶ 80.

## VI.   Disposition

¶ 27   The judgment is affirmed.

JUDGE DUNN and JUDGE TAUBMAN concur.