The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

June 3, 2021

**2021COA79**

**No. 20CA1400, *People in Interest of E.S.* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship**

A division of the court of appeals considers whether, during a dependency and neglect proceeding, a county department of human services may bar a parent from participating in visitation solely because the parent has outstanding warrants, without a finding that visitation would be detrimental to the children's health and safety. The division holds that a department may not adopt a blanket policy barring parental visitation without consideration of the children's health and safety. The division therefore reverses the judgment terminating father's parental rights.

COLORADO COURT OF APPEALS         **2021COA79**

Court of Appeals No. 20CA1400
Arapahoe County District Court No. 18JV261
Honorable Natalie T. Chase, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.S. and L.S., Children,

and Concerning F.S.,

Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE LIPINSKY
Pawar and Taubman*, JJ., concur

Announced June 3, 2021

Ronald Carl, County Attorney, Heather L. Tomka, Assistant County Attorney,
Aurora, Colorado, for Appellee

Alison Bettenberg, Sheena Knight, Guardians Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Denver, Colorado,
for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    In determining whether a parent's parental rights should be terminated under section 19-3-604(1)(c), C.R.S. 2020, following an adjudication that the parent's children are dependent or neglected, a juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent. The Colorado Children's Code details how a department can satisfy the reasonable efforts standard. Providing visitation services for parents with children in out-of-home placement is one of the actions a department must take to satisfy the standard.

¶ 2    In this case, we consider whether a department may bar a parent from participating in visitation solely because the parent has outstanding warrants, without a finding that visitation would be detrimental to the children's health and safety. We hold that a department may not adopt such a blanket policy. For that reason, we reverse the juvenile court's judgment terminating the father's parental rights.

## I.    Background

¶ 3    F.S. (father) appeals the judgment terminating his parental rights to E.S. and L.S. (the children). (In this case, C.P. (mother) also appealed the judgment terminating her parental rights to the

1

children.  Because we grant mother's motion for limited remand in a separate order, we do not address mother's appellate arguments in this opinion.)

¶ 4    In March 2018, the Arapahoe County Department of Human Services (Department) initiated a dependency and neglect case based on concerns that mother was using marijuana around the children, then ages three and one, and that the home was unsafe for the children.  The Department did not know father's whereabouts and reported he had an active warrant for his arrest.  (The record contains references both to a "warrant" and "warrants." The caseworker's reports state that father had outstanding warrants in El Paso County and Denver, and the treatment plan similarly refers to "warrants."  For this reason, we refer to father's "warrants.")

¶ 5    The juvenile court adjudicated the children dependent and neglected.  The juvenile court adopted a treatment plan for father that required him to (1) maintain employment; (2) refrain from criminal activity; (3) attend parenting time once he had cleared his active warrants; (4) remain in contact with the caseworker; and (5)

complete a domestic violence evaluation and comply with treatment recommendations.

¶ 6 In October 2019, the Department moved to terminate father's parental rights. The Department refiled the termination motion in June 2020 after the termination hearing was continued.

¶ 7 Following an evidentiary hearing in July 2020, the juvenile court terminated father's parental rights.

¶ 8 After this case was fully briefed, father joined with mother in a motion for limited remand. In their motion, the parents note that the supreme court publicly censured Natalie Chase, the juvenile court judge who ordered the termination of their parental rights, for undermining the confidence in the impartiality of the judiciary by manifesting bias or prejudice based on race or ethnicity. *See In re Chase*, 2021 CO 23, ¶ 7, ___ P.3d ___, ___.

¶ 9 Because we reverse the judgment as to father on the merits, the motion for limited remand is moot as to him. We grant the motion for limited remand as to mother in a separate order.

## II. Termination Criteria and Standard of Review

¶ 10 The juvenile court terminated father's parental rights under section 19-3-604(1)(c). Under that statute, the juvenile court may

terminate parental rights if it finds by clear and convincing evidence that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan was unsuccessful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.

¶ 11 Where resolution of an issue necessitates application of the termination statute to evidentiary facts, it presents a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15, 480 P.3d 682, 686. We review the juvenile court's factual findings for clear error. C.R.C.P. 52. The credibility of witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn therefrom are all within the province of the juvenile court. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). But a determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31, 456 P.3d 1284, 1289.

### III. Discussion

#### A. Reasonable Efforts

¶ 12    Father first asserts that the Department failed to make reasonable efforts because it did not provide him visitation services. We agree.

##### 1. Preservation and Standard of Review

¶ 13    The Department and the guardian ad litem (GAL) contend that father's challenge to the Department's reasonable efforts is unpreserved because he failed to raise it before the termination hearing. Divisions of this court are split on this issue. One division has held that a parent must bring any deficiencies in the department's lack of reasonable efforts to the court's attention before the termination hearing to preserve such a challenge for appeal. *See People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007). Another division has held that a parent's failure to object to the department's lack of reasonable efforts before the termination hearing does not bar appellate review of a reasonable efforts claim. *See People in Interest of S.N-V.*, 300 P.3d 911, 916 (Colo. App. 2011).

¶ 14    Under the circumstances of this case, we need not decide which approach is correct because even if we assume, without deciding, that father failed to preserve this issue, we elect to address his claim to avert a miscarriage of justice. *See People in Interest of M.B.*, 2020 COA 13, ¶ 21, 459 P.3d 766, 770-71 ("[G]iven the constitutional nature of parental rights, we will recognize a miscarriage of justice exception for review of unpreserved errors."); *In re R.G.B.*, 98 P.3d 958, 959 (Colo. App. 2004) ("Where an error of the trial court . . . involves a miscarriage of justice, we may consider the issue for the first time on appeal."). This exception to the preservation rule applies to "those limited situations in which an error by the trial court, not otherwise properly preserved for appeal, should be characterized as . . . one causing a miscarriage of justice." *People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). For the reasons discussed below, we conclude that a miscarriage of justice would result if we expressly or implicitly enforced a blanket policy barring parental visitation in a dependency and neglect case without consideration of the children's health and safety.

¶ 15     The Department and the GAL also disagree with father regarding which standard of review applies to our review of a reasonable efforts claim.  They assert that we should review the court's reasonable efforts finding only for clear error.  *C.A.K.*, 652 P.2d at 613.  Father responds, however, that while the court's factual findings — "the raw, historical data underlying the controversy" — are reviewed for clear error, its legal determinations based on those factual findings are still subject to de novo review.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, ___ P.3d ___, ___ (citing *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 21, 329 P.3d 276, 282).

¶ 16     We recognize that a division of this court recently concluded that "it is unclear whether we are to review the juvenile court's determination of reasonable efforts . . . de novo or for clear error."  *People in Interest of A.A.*, 2020 COA 154, ¶ 13, 479 P.3d 57, 61 (noting that our supreme court had not yet reviewed a juvenile court's judgment terminating parental rights as a mixed question of fact and law).  But the division in *A.A.* determined that it did not need to resolve the question "because the juvenile court's

decision . . . was erroneous under either standard." *A.A.*, ¶ 13, 479 P.3d at 61.

¶ 17    For the reasons explained below, we, too, need not resolve this dispute because, under either standard, the juvenile court's decision on reasonable efforts was erroneous.

2.    Law

¶ 18    In determining whether a parent is unfit under section 19-3-604(1)(c), the juvenile court must consider whether the Department made reasonable efforts to rehabilitate the parent. § 19-3-604(2)(h); *S.N-V.*, 300 P.3d at 915. "Reasonable efforts" means "the exercise of diligence and care" for a child in out-of-home placement. § 19-1-103(89), C.R.S. 2020.

¶ 19    The reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208, C.R.S. 2020. § 19-1-103(89). Among the efforts required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; visitation services for parents with children in

out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b).

### 3. Analysis

¶ 20 Father asserts that the Department did not make reasonable efforts because it prohibited him from visiting his children while he had outstanding warrants. For the reasons discussed below, we agree with father and conclude that the Department did not make reasonable efforts.

¶ 21 Father's treatment plan required him to participate in visitation "[t]o assist [him] with developing and maintaining a positive and appropriate relationship with [the children] *once active warrants have been cleared* by El Paso and Denver Counties." (Emphasis added.) The caseworker testified that father never visited with the children because he had not resolved his warrants. She said that a Department policy prohibited any parent from participating in visitation if the parent had an outstanding warrant. The caseworker did not explain the reasons for the policy, nor did she elaborate why such a policy was appropriate in this case. Father asked the Department to make an exception to the policy to allow him to have face-to-face visitation with the children. The

9

caseworker declined father's request, however, because "it was just against what the policy states."

¶ 22     Father maintains that the Department's policy is "per se invalid" under section 19-3-208 because the statute provides that the Department "must" provide him with visitation services. *See Ryan Ranch Cmty. Ass'n v. Kelley*, 2016 CO 65, ¶ 42, 380 P.3d 137, 146 ("[T]he word 'must' connotes a mandatory requirement."). Section 19-3-208 requires the Department to provide visitation to parents, but only "as determined necessary and appropriate by individual case plans." § 19-3-208(2)(b). However, the juvenile court, and not the Department, must decide whether visitation services are necessary and appropriate in a particular case. *People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (noting that questions concerning the children's health and safety are matters entrusted to the juvenile court's sound discretion, and decisions regarding visitation may not be delegated to a department). We therefore agree with father that the Department's blanket policy violates section 19-3-208 because it creates a general prohibition on visitation services without any consideration of the children's health and safety or whether visitation is necessary and

appropriate under the treatment plan. *See People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006).

¶ 23    In concluding that the Department's policy is improper, we do not intend to suggest that the Department could never recommend suspending visitation services for a parent with an outstanding warrant. Rather, the Department could deny a parent visitation services under these circumstances, but only if the juvenile court found that visitation with the parent would be detrimental to the health and safety of the child. *See, e.g., id.* at 305 (noting that face-to-face visitation may not be appropriate if the parent is incarcerated or has committed sexual assault on a child). But, absent health and safety concerns, a juvenile court may not approve a treatment plan that does not provide for face-to-face visitation. *Id.* ("[T]he trial court erred in approving a case plan that provided for written communication in lieu of visitation services.").

¶ 24    The Department and the GAL do not direct us to anywhere in the record where the juvenile court explicitly found that the prohibition of father's visitation was necessary to protect the children. *See People in Interest of K.C.*, 685 P.2d 1377, 1379-80 (Colo. App. 1984) (noting that visitation may not be denied without

11

the court's approval or knowledge). To the extent the juvenile court implicitly approved the limitation by adopting the treatment plan, the juvenile court did not make any specific findings about whether such a limitation was needed to protect the children's health and safety. *See A.A.*, ¶¶ 24-27, 479 P.3d at 62-63; *see also D.G.*, 140 P.3d at 305. And we see no evidence in the record that father's active warrants in and of themselves posed a threat to the children's health and safety. *Compare People in Interest of T.W.*, 797 P.2d 821, 823 (Colo. App. 1990) (denying visitation because there was a strong possibility that the parent had sexually assaulted the child and the child "became extremely upset before and after visits" with the parent), *with D.G.*, 140 P.3d at 305 (noting that visitation could not be denied "because of the department's generalized belief that the children could be emotionally harmed if they had any personal contact with their parents").

¶ 25    The lack of visitation here is akin to the situation described in *A.A.*, ¶ 25, 479 P.3d at 63, in which the department recommended suspending visitation until the parents could "demonstrate two weeks of monitored sobriety." *See also D.G.*, 140 P.3d at 305 (noting that the juvenile court erred by adopting the department's

recommended visitation plan that prohibited face-to-face contact).

In *A.A.*, ¶¶ 25-27, 497 P.3d at 63, the court adopted the department's recommendation, but it did not explain why it did so or how the "order was designed to promote the health, safety, and well-being of the children." Because one of the parents "never established two consecutive weeks of clean urinalysis tests, the [d]epartment never offered services for her." *Id.* at ¶ 30, 497 P.3d at 63. According to the division, this situation resulted in a "total[] depriv[ation] of the visitation services required by section 19-3-208(2)[(b)] without any showing that such total deprivation was necessary to protect the children." *Id.* Therefore, the department did not make reasonable efforts. *Id.*

¶ 26    Because we agree with the analysis in *A.A.*, we also conclude that "the juvenile court did not ensure that [father] was provided adequate visitation services" here. *Id.* The Department did not offer visitation to father solely because of its policy prohibiting visitation for a parent with an outstanding warrant, resulting in a total deprivation of the visitation services that section 19-3-208(2)(b) requires. *See A.A.*, ¶ 30, 497 P.3d at 63. To the extent that the

juvenile court approved of the limitation, *see K.C.*, 685 P.2d at 1379-80, it erred, *see A.A.*, ¶ 26, 497 P.3d at 63.

¶ 27 Lastly, the Department and the GAL do not argue that the court's refusal to allow father to have visitation with the children, consistent with the Department's blanket policy, constituted harmless error in light of father's noncompliance with other parts of his treatment plan. Rather, their assertion that father did not engage in his treatment plan is inextricably intertwined with their argument that father could have visited the children if he had complied with the Department's blanket policy by addressing his outstanding warrants.

¶ 28 We therefore conclude that the juvenile court erred by applying the blanket policy to support its finding that the Department had made reasonable efforts. For this reason, we reverse the judgment. To the extent that father's treatment plan was based on the Department's blanket policy, the juvenile court must modify father's treatment plan as described above and afford father an opportunity to have face-to-face visitation, subject to any concerns regarding the children's health or safety, under section 19-3-208.

¶ 29    Because we reverse the termination judgment based on the Department's failure to make reasonable efforts to provide father with visitation services, we need not address (1) whether the Department's policy also violated father's due process rights or (2) father's other claims challenging the Department's failure to make reasonable efforts. For the same reason, there is no need for a remand to address whether Judge Chase's bias or prejudice based on race or ethnicity may have affected her decision to terminate father's parental rights.

### B.    Appropriate Treatment Plan

¶ 30    Father also asserts that his treatment plan was inappropriate because it included a component that required him to address domestic violence even though domestic violence was not an issue. Because this issue is likely to arise on remand, we choose to address it. We reject father's contention.

### 1.    Law

¶ 31    The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25, 433 P.3d 114, 119-20.

15

Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(10); *People in Interest of K.B.*, 2016 COA 21, ¶ 13, 369 P.3d 822, 826.

¶ 32    We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess by considering the facts when the juvenile court approved the plan. *B.C.*, 122 P.3d at 1071.  That a treatment plan is not ultimately successful does not mean that it was inappropriate.  *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

## 2.    Analysis

¶ 33    Father contends that, because he had no criminal history involving domestic violence, the domestic violence component of his treatment plan was unnecessary.

¶ 34    The petition listed a domestic violence conviction from 2009. However, as father points out, later reports from the Department did not include the 2009 conviction.  It is unclear to us whether the Department intentionally removed the conviction in the later reports

because father did not have such a conviction or for some other reason.

¶ 35    At the termination hearing, the caseworker testified that the Department required father to complete a domestic violence evaluation, in part based on his "criminal history." When pressed on cross-examination about father's criminal history related to domestic violence, the caseworker said, "I'd have to look at my notes, but . . . there [were] just more aggressive charges, not specifically around domestic violence, but I'd have to look." Father's attorney asked whether the "[i]nformation that you listed in the report to the [c]ourt[,] is that . . . the information you would be referring back to?" The caseworker responded, "Yes." The report did not list any domestic violence charges.

¶ 36    In any event, even if father did not have a criminal conviction for domestic violence, we conclude that record evidence supported the domestic violence component. At the termination hearing, the caseworker testified that the domestic violence component was added "based on reports from [mother]." Father does not contend on appeal that the juvenile court erred by adopting the domestic violence component based on mother's reports of domestic violence.

We therefore conclude that the juvenile court did not err by including the domestic violence component in father's treatment plan.

## IV. Conclusion

¶ 37 We reverse the judgment terminating father's parental rights. On remand, before the court may again consider termination of father's parental rights, it must modify the existing treatment plan to the extent it was based on the Department's blanket policy prohibiting him from participating in visitation. In implementing father's treatment plan, the court should determine whether, and under what conditions, the Department must provide father with visitation, considering the children's health and safety, under section 19-3-208. Absent health or safety concerns, the Department must afford father an opportunity to have visitation before it may file another termination motion, if it chooses to do so.

JUDGE PAWAR and JUDGE TAUBMAN concur.