24CA0306 Peo in Interest of EJW 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0306
Arapahoe County District Court No. 20JV547
Honorable Don J. Toussaint, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.J.W., J.M.R., and G.D.W., Children,

and Concerning N.J.R.,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Ron Carl, County Attorney, Jordan Lewis, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, N.J.R. (father) appeals the juvenile court's judgment terminating his parent-child legal relationships with E.J.W., J.M.R., and G.D.W. (the children). We affirm.

## I.     Background

¶ 2     In 2020, the Arapahoe County Department of Human Services received a report of concern alleging that father had committed an act of domestic violence against mother.  At the time of the alleged incident, father was under the influence and the children were present.  Based on these concerns, the Department initiated a petition in dependency and neglect.  The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for father.

¶ 3     Two years after the petition was filed, the Department moved to terminate father's parental rights.  The court held a four-day evidentiary hearing.  At the conclusion of the hearing, the court granted the motion.

## II.     Fit Within a Reasonable Time

¶ 4     Father asserts that the juvenile court erred by finding that he couldn't become a fit parent within a reasonable time because, in

his view, he made significant progress in his treatment plan objectives.  We aren't convinced.

### A. Standard of Review and Applicable Law

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 6    An unfit parent is one whose conduct or condition renders him "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions."  § 19-3-604(2).  In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic

2

or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 7    What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each child. *Id.* at ¶ 25. A "reasonable time" isn't an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court isn't required to give the parent more time to comply. *See id.* at ¶¶ 24-25. When, as in this case, a child is under six years old at the time the petition is filed, the action is subject to the expedited permanency planning (EPP) provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 8    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data underling the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12,

3

¶ 10. We review de novo the juvenile court's legal conclusions. *See id.*; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

¶ 9    It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B.    Analysis

¶ 10    The juvenile court determined that father was unfit, that he hadn't substantially completed his treatment plan objectives, and that he was unlikely to become fit within a reasonable period of time. The court also found that "[t]here [was] no legitimate reason to delay permanency again" and that the children needed the permanency and stability only termination could provide. The court noted that this was an EPP case that had "languished for approximately thirty-two months."

¶ 11    The record supports father's assertion that he complied with portions of his treatment plan, which included objectives requiring him to maintain caseworker contact; comply with pretrial services; address issues of domestic violence, mental health, and substance use; obtain stable housing and employment; complete parenting

education; demonstrate protective parenting; and live a legal lifestyle. The caseworker testified that father received no new criminal charges, completed some substance use treatment, and was largely compliant with pretrial services. Father also completed a parenting class and participated in substance use, psychological, and domestic violence evaluations.

¶ 12 But, contrary to father's assertions, the record largely shows that father failed to substantially comply with nearly every aspect of his treatment plan. The caseworker testified that father's communication with the Department was sporadic and inappropriate, and that father routinely fixated on mother's issues instead of his own. Father frequently missed pretrial urinalysis tests or tested positive for substances. While father reported that he had obtained stable housing and employment, he failed or refused to provide verification to the Department. He was never able to articulate what he learned from his parenting education class or how domestic violence could negatively impact his children. He was unsuccessfully discharged from a men's therapy group after he made repeated inappropriate statements about women that made others in the group uncomfortable. And while father had no

5

new criminal charges, the Department sought a protection order against him, which he soon violated by threatening to kill a parenting time coach.

¶ 13　　True, as father asserts, the children were reportedly happy to see him when family time occurred. However, the record also shows father would fixate on mother during family time sessions and would become unable to control his emotions when receiving feedback. At one point, father declined to participate in family time with his children until he received a new parenting time coach. And family time was later suspended by court order after father threatened a second parenting time coach. While the court gave father a path to resume visits, father never completed the necessary work to reinstate family time.

¶ 14　　There was no evidence that father ever engaged in the domestic violence evaluation recommendations or treatment during the two years the case had been open, which was the primary reason the Department became involved with the family. The caseworker testified that she continued to have domestic violence concerns because father hadn't indicated he was willing to make

any changes at all and continued to minimize the issue of domestic violence.

¶ 15    Above all, the caseworker testified that, given the children's needs, she didn't believe it was appropriate for them to have to wait any longer because the case had been open well beyond the EPP guidelines and the children were "in desperate need of permanency."

¶ 16    Given this record, we can't conclude that the juvenile court erred by finding father couldn't become fit within a reasonable time.

### III.    Continuance

¶ 17    Father next contends that the juvenile court erred by denying his request to continue the termination hearing.  We disagree.

### A.    Applicable Law

¶ 18    The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child."  § 19-1-102(1)(c).  Thus, when ruling on a motion to continue, the juvenile court should "balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency."

*People in Interest of R.J.B.*, 2021 COA 4, ¶ 11; *see also C.S. v. People in Interest of I.S.*, 83 P.3d 627, 638 (Colo. 2004).

¶ 19    When, as in this case, the EPP provisions apply, the court must not grant a delay unless good cause is shown and the court finds that the child's best interests will be served by granting a continuance.  §§ 19-3-104, 19-3-508(3)(a), 19-3-602(1), C.R.S. 2024.

¶ 20    We review a juvenile court's denial of a motion to continue for an abuse of discretion.  *R.J.B.*, ¶ 13.  A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable. *People in Interest of C.Y.*, 2018 COA 50, ¶ 13.

### B.    Analysis

¶ 21    Contrary to father's argument, the juvenile court granted a continuance specifically to allow father time to prepare his case in chief.  At the end of the first day of the termination hearing, the court set a second day forty-three days out, explaining to father what he needed to do to ensure that his witnesses would testify.  At the start of that second day, father asked for a continuance to allow for his witnesses to appear.  The court allowed the Department to present the remainder of its case and granted father a continuance

8

to secure his witnesses. About two months later, on the third day of the hearing, father asked for a second continuance because one of his witnesses wasn't present.

¶ 22 In evaluating this request, the court found that the termination hearing had already been continued once and that the case had been open well beyond the EPP guidelines. *See* §§ 19-1-102(1.6), 19-1-123.

¶ 23 On appeal, father asserts that denying his request for a second continuance was not in the children's best interests, but he offers no argument or evidence supporting his claim.

¶ 24 We conclude that the court didn't abuse its discretion because it properly weighed the need for orderly and expeditious administration of justice against the facts underlying father's request and the children's need for permanency. *See R.J.B.*, ¶ 11.

### IV.   Appointment of Counsel

¶ 25 Father last argues that the juvenile court violated his right to due process by refusing to appoint counsel for him at the termination hearing and requiring him to appear pro se. We aren't persuaded.

## A.     Applicable Law

¶ 26     The Children's Code provides that parents have a right "to be represented by counsel at every stage" of a dependency and neglect proceeding. § 19-3-202(1), C.R.S. 2024.  But a parent's right to counsel in a termination proceeding is a statutory right, not a constitutional one.  *People in Interest of B.H.*, 2021 CO 39, ¶ 57.

¶ 27     Due process requires the appointment of counsel only where "the parent's interests are at [their] strongest, where the state's interests are at their weakest, and the risks of error are at their peak."  *C.S.*, 83 P.3d at 637.  Thus, a due process claim fails if "the risk of an erroneous result at [the] termination hearing was low." *B.H.*, ¶ 55.  That may be the case when, for example, the parent has requested his attorney's withdrawal, and the weight of the evidence and history of the case make it unlikely that appointment of a new attorney would "turn the tide" in the parent's favor.  *Id.* at ¶ 58 (citation omitted).  We review procedural due process claims de novo.  *Id.* at ¶ 49.

## B.     Analysis

¶ 28     We agree with the Department's and the guardian ad litem's assertion that because father has not demonstrated how the court's

refusal to appoint counsel at the termination hearing created actual prejudice, his due process claim must fail.

¶ 29 Father was appointed counsel at the onset of the case. Father's first attorney later went on leave, and co-counsel took over father's case. When the first attorney returned from leave, both attorneys remained on the case. They both later moved to withdraw and, following a hearing, the court granted the motion over father's objection and appointed new counsel for father.

¶ 30 Later on, father's third appointed attorney moved to withdraw. Father was notified of the motion to withdraw, informed of his right to object within fourteen days, and given notice of the upcoming hearings. The court waited an additional four days past the required fourteen days and, receiving no objection from father, granted the motion to withdraw. Father then chose not to appear at the pre-trial conference, despite receiving notice and confirming his receipt of such notice via email.

¶ 31 At the termination hearing, father requested that counsel be appointed for him again. The court denied that request, finding that father had waived his right to an attorney.

¶ 32    The record establishes that the risk of an erroneous result at the termination hearing was low.  *Id.* at ¶ 55; *see also People in Interest of E.B.*, 2022 CO 55, ¶ 17 (a parent can't prevail on a due process claim absent a showing of harm or prejudice).

¶ 33    As described above, the evidence showed that (1) father had not substantially engaged in his treatment plan and had not demonstrated any behavior change; (2) the children needed permanency; and (3) there continued to be concerns about domestic violence and father's ability to be a protective, safe parent.

¶ 34    These facts demonstrate that the appointment of a new attorney could have done little to "turn the tide" of the hearing in father's favor.  *B.H.*, ¶ 59.  Thus, "[g]iven the low risk of a wrong result, father has not demonstrated a due process violation because the absence of counsel did not render the proceeding fundamentally unfair."  *Id.* at ¶ 64.

## V.    Disposition

¶ 35    The judgment is affirmed.

JUDGE BROWN and JUDGE YUN concur.