24CA1389 Peo in Interest of JDC 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1389
City and County of Denver Juvenile Court No. 23JV30377
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.D.C., Jr., a Child,

and Concerning J.D.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Kerry Tipper, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     J.D.C. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with J.D.C., Jr. (the child). Father's sole contention on appeal is that the court erred in determining that there were no viable less drastic alternatives to termination of his parental rights. We affirm.

## I.     Background

¶ 2     In June 2023, father brought the three-month-old child to an emergency room. Hospital staff determined that the child was substance-exposed and had a skull fracture and other injuries consistent with abuse. The hospital notified the Denver County Department of Human Services, which already had an open case involving the family. The Department sought, and was granted, temporary protective custody and filed a petition in dependency and neglect. The child was placed in a foster home for medically fragile children (medical foster home).

¶ 3     Father admitted the petition. The court adjudicated the child dependent or neglected and entered a dispositional order. Later, the Department moved to terminate father's parental rights. In July 2024, nine months after adopting the treatment plan, the

court terminated father's parent-child legal relationship with J.D.C., Jr.

## II.    Father's Contention

¶ 4    Father contends that the juvenile court should have ordered an allocation of parental responsibilities to either paternal or maternal grandmother.  We perceive no error.

### A.    Applicable Law

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent did not comply with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.  Father does not contest that these statutory criteria were met.

¶ 6    Implicit in the statutory criteria for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives to termination.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  When considering less drastic

alternatives, the court must base its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 7 When deciding whether permanent placement with a relative is a viable less drastic alternative to termination, the court may consider various factors, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child. *People in Interest of A.R.*, 2012 COA 195M, ¶ 38. "[L]ong-term or permanent placement with a family member or foster family, short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs." *Id.* at¶ 41.

¶ 8 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be in the child's best interest. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32.

¶ 9 When the juvenile court considers the availability of a less drastic alternative and determines that termination of a parent's rights would be in the child's best interests, we are bound to affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 10 Explicitly giving primary consideration to the physical, mental, and emotional needs of the child, the juvenile court found no less drastic alternatives to termination. The juvenile court noted that maternal grandmother had withdrawn her request to be considered for permanent placement. And the court found that paternal grandmother's issues with sobriety and emotional regulation, as well as her inability to care for the child's special needs, eliminated her as a placement option.

¶ 11 The record supports the court's findings. The initial caseworker testified that paternal grandmother's history of substance use disqualified her from being a placement for the child. But a placement's disqualification may be overcome with a mediation plan and a court order. Thus, the caseworker asked paternal grandmother to submit to urinalysis and hair follicle tests.

The test results suggested that paternal grandmother was still using drugs. The caseworker also had concerns about paternal grandmother's mental health. Paternal grandmother's emotional presentation was "heightened, and at times explosive." Ultimately, the caseworker ruled her out as a placement for the child.

¶ 12 Maternal grandmother, who initially requested placement of the child, already had five children in her care and also resided with adult children. And maternal grandmother had "serious medical complications going on at the time." The caseworker also ruled her out as a placement.

¶ 13 After five months, the child's medical foster home informed the Department that it was not a permanent placement option. The parents had identified no other potential placements. The Department also contacted a cousin, who "was not able to take [the child]." The Department identified another foster family, but "they backed out" without explanation.

¶ 14 At that time, the Department again considered maternal grandmother and paternal grandmother as placement options. According to the caseworker, maternal grandmother was still not an available placement option because "one of the boys living in the

home was having . . . significant behavioral issues," and "there [were] a lot of stability issues" for the family. At the time of the termination hearing, the caseworker understood maternal grandmother no longer wanted to be considered as a placement option. Meanwhile, the Department never received confirmation that paternal grandmother's mental health had improved. And the second caseworker opined that that paternal grandmother was not an appropriate placement for the child at the time of termination.

¶ 15 To the extent that father argues that his ex-partner was a viable less drastic alternative, we are not convinced. The parents did not suggest the placement to the Department before the termination hearing. And a department need not independently identify and evaluate other placements. *See People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2005).

¶ 16 The second caseworker opined that there were no viable less drastic alternatives to termination for the child. She testified that the child, who had been in foster care for more than a year, had no bond with either parent. He had ongoing, complicated medical needs. Moreover, citing similar reasons, the first caseworker

explained that the child needed the consistency of adoption and termination was in his best interest.

¶ 17 The court properly considered the child's physical, mental and emotional needs and determined that the proposed less drastic alternatives of either maternal or paternal grandmother did not provide the stability and permanence that the child needed. Because these findings are supported by competent evidence in the record, we will not disturb them.

### III.   Disposition

¶ 18 The judgment is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.