24CA1278 Peo in Interest of PA 06-05-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1278
Adams County District Court No. 23JV30071
Honorable Caryn A. Datz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of P.A., a Child,

and Concerning K.C.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

---

Heidi M. Miller, County Attorney, Katherine Gregg, Assistant County Attorney, Westminster, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, K.C.S. (mother) appeals the judgment terminating her parent-child legal relationship with P.A. (the child).  We affirm.

## I.     Background

¶ 2     In April 2023, the Adams County Human Services Department filed a petition in dependency and neglect after mother exhibited concerning behaviors, including apparent delusions, and was placed on a mental health hold following the birth of the child.

¶ 3     The juvenile court accepted mother's no-fault admission to the petition and adjudicated the child dependent and neglected.  The court adopted a treatment plan for mother.  The court appointed legal counsel for mother, and it also appointed a guardian ad litem to assist her in view of her extensive mental health history.

¶ 4     The Department later moved to terminate mother's rights.  The juvenile court held an evidentiary hearing in June 2024.  The next day, it granted the motion and terminated mother's parental rights.

## II.     Analysis

¶ 5     Mother contends that the juvenile court erred by terminating her parental rights because (1) the Department did not provide her with reasonable accommodations under the Americans with

Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and thus it failed to make reasonable efforts to rehabilitate her and reunify her with the child; (2) she received ineffective assistance of counsel before and during the termination hearing; and (3) the record does not support the court's finding that there were no less drastic alternatives to termination. We consider each of these contentions in turn.

### A. Mother's ADA Reasonable Efforts Claim

¶ 6 Mother first contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her when it failed to accommodate her mental health concerns in violation of the ADA.

¶ 7 The Department and the guardian ad litem assert, and we agree, that this argument is not properly before us because mother failed to preserve it in the juvenile court. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[G]enerally, appellate courts review only issues presented to and ruled on by the lower court.").

¶ 8 It is undisputed that mother never asserted to either the Department or the juvenile court that she had a qualifying disability within the meaning of the ADA. Nor did she suggest any

modifications to her treatment plan or request any accommodations for her disability that would allow her to better engage with the plan or the case. *See id.* Because she failed to raise this issue during the case, the juvenile court did not have an opportunity to determine whether mother had a disability, to evaluate any requested accommodations, or to order the Department to provide her with reasonable accommodations. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶¶ 16-17; *see also People in Interest of S.K.*, 2019 COA 36, ¶ 35 ("What constitutes a reasonable accommodation will be based on an individual assessment."). And the parties did not have the opportunity to develop a factual record for our review. *See S.K.*, ¶ 21 n.2 (noting that whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that a juvenile court must resolve).

¶ 9     Still, mother argues that we should address her unpreserved ADA argument under the miscarriage of justice exception to the preservation rule. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14 (noting that, in very limited situations, an appellate court may address unpreserved issues in dependency and neglect cases to avoid a "miscarriage of justice"). In support of her argument,

mother points out that, because she had previously been reported to have bipolar disorder and her mental health was a consistent concern in the case, she "clearly" suffered from a disability of which the case professionals were aware. *See S.K.*, ¶ 22 (noting that, if a disability is "obvious," a department may be required to accommodate the disability, even if the parent does not inform the department about the disability).

¶ 10 We agree with mother that if a department knows or has reason to know that a parent has a qualifying disability under the ADA, then the department is obligated to provide that parent with reasonable accommodations. *Id.* However, under these facts we disagree with mother's contention that the Department had reason to know that she had a qualifying disability.

¶ 11 It's true that the caseworker, who was qualified as an expert in social work with an emphasis on child protection, testified that mother's mental health was an ongoing concern and that mother frequently lacked focus or appeared paranoid. Hospital staff also reported to the caseworker that mother had been diagnosed with bipolar disorder, mild postpartum depression, mixed mood regulation, and recommended ongoing treatment. And the

caseworker further opined that mother's untreated mental health made her an unsafe parent for the child.

¶ 12     However, the record also shows that the caseworker provided mother with at least three referrals for a dual diagnosis that would have evaluated her mental health issues, but she never completed one.  And the caseworker opined that, given her lack of expertise in mental health, it was difficult without a full assessment to say exactly what mother's mental health concerns were.  Indeed, the caseworker testified that even though mother exhibited some mental health problems, she was resourceful and able to identify and access certain benefits.

¶ 13     Further, mother's counsel never asserted that mother had a qualifying disability under the ADA throughout the course of this case.  And mother's counsel never identified or requested any reasonable accommodations from either the Department or the court.  Critically, mother continually denied having any mental health concerns.  Mother also never asserted that she had a disability or made a request for any type of accommodation.  Indeed, even on appeal mother fails to articulate what kind of

accommodation would have allowed her to meet the terms of her treatment plan.

¶ 14 Under these circumstances, we can't conclude that the Department should have known that mother had a disability under the ADA. And given that conclusion, we don't see how the Department could have unilaterally discerned what type of accommodations mother might have needed given this record. We therefore conclude that reviewing mother's unpreserved ADA claim isn't necessary to avoid a miscarriage of justice under these circumstances.

## B. Ineffective Assistance of Counsel

¶ 15 Mother next contends that she received ineffective assistance of counsel because her counsel was aware of her mental health-related disabilities but failed to provide ADA notice or seek amendments to the treatment plan. We disagree.

### 1. Applicable Law

¶ 16 A parent has a statutory right to appointed counsel in dependency and neglect proceedings. § 19-3-202(1), C.R.S. 2024; *see also* §§ 19-1-105(2), 19-3-602(2), C.R.S. 2024. A parent's statutory right to counsel includes the right to effective assistance

of counsel. *See A.R. v. D.R.*, 2020 CO 10, ¶ 47; *see also People in Interest of C.H.*, 166 P.3d 288, 290 (Colo. App. 2007).

¶ 17    In evaluating a claim of ineffective assistance of counsel in a termination proceeding, we apply the same test that we would when evaluating an ineffective assistance of counsel claim in a criminal case. *See A.R.*, ¶¶ 48, 60 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under this test, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at ¶ 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 18    Under this approach, an appellate court ordinarily must remand for an evidentiary hearing if the parent's allegations are sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. However, if the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance of counsel claim. *Id.*

## 2. Mother Doesn't Demonstrate Prejudice For Her Ineffective Assistance of Counsel Claim

¶ 19 Even if we were to assume without deciding that counsel's performance fell below the range of professionally competent assistance, mother has not shown that she was prejudiced by the alleged error. Her assertions do not specifically show that, but for her counsel's failure to raise the ADA or to request accommodations, the result of the termination hearing would have been different.

¶ 20 For example, mother contends that if her counsel had filed notice of a qualifying disability and requested amendments to the treatment plan to ensure the plan "appropriately centered [on her] mental health and provided for adequate support to facilitate [her] engagement, there is a reasonable probability that [she] would have obtained mental health treatment," which in turn would have enabled her to address the remaining child protection concerns that led to the Department's involvement. But mother does not explain how her treatment plan could have been designed differently, does not identify reasonable accommodations she needed, and does not

8

argue how those accommodations would have rendered her a fit parent in a reasonable time for the child.

¶ 21 In short, mother's allegations lack specificity to demonstrate prejudice, and thus, she has not made a prima facie showing of ineffective assistance of counsel. *Id.* at ¶ 60 ("If the parent's allegations lack sufficient specificity, then the ineffective assistance of counsel claim may be summarily denied."). Consequently, this claim fails to satisfy the second prong of the *Strickland* test, and mother has failed to show a reasonable probability that the result of the proceeding would have been different. *Id.*

### C. Less Drastic Alternatives

¶ 22 Lastly, mother contends that the juvenile court erred by finding there were no less drastic alternatives to termination of her parental rights. Specifically, she argues that the Department failed to adequately investigate placement options she had provided to the supervising caseworker and inappropriately placed the burden of contacting those placements on mother. We discern no basis for reversal.

### 1. Standard of Review and Applicable Law

¶ 23    Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review de novo the proper legal standard that applies in the case and the application of that standard to the particular facts. *M.A.W. v. People in the Interest of A.L.W.*, 2020 CO 11, ¶ 31. However, we review the court's factual findings for clear error and will not disturb them when they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15.

¶ 24    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 25    Implicit in the statutory scheme for termination is a requirement that the juvenile court consider and eliminate less

drastic alternatives before entering an order of termination. *People in Interest of B.H.*, 2021 CO 39, ¶ 51; *A.M.*, ¶ 19. When considering less drastic alternatives, the court bases its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 26 Ultimately, for a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be in the child's best interest. *A.M.*, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *B.H.*, ¶ 80.

2. The Record Supports the Juvenile Court's
Less Drastic Alternatives Findings

¶ 27 The juvenile court noted in its findings that there was evidence to suggest that mother had provided additional potential placement names shortly before the termination hearing and, "for unknown reasons," the caseworker's supervisor directed mother to work with

11

those placement options to complete the kinship information on her own.

¶ 28    However, the court also observed that at the time of the termination hearing "there was no evidence of any identified family members that were appropriate and available for placement of the child." The court also stated that because mother had made serious accusations against the child's caregivers in the past, it was not convinced that mother would adhere to court orders on parenting time. It therefore found that "any APR agreement would likely result in conflict between the child's caregivers and her parent in a manner that would be emotionally unsafe and damaging and could disrupt her permanency."

¶ 29    Ultimately, the juvenile court concluded that "[u]nder the totality of the circumstances, including the child's age, her developmental needs, and the length of time the child has been placed outside of the home," there were no available less drastic alternatives and termination was in the child's best interests.

¶ 30    It is concerning that the caseworker's supervisor apparently asked mother to work with the individual placement options to complete the kinship paperwork, and nothing in this opinion should

be read as approving of that practice. Nonetheless, the record supports the court's findings.

¶ 31 The caseworker testified that she completed two searches for family members, inquired with mother about potential placement options, and reached out to numerous family members who either declined placement or did not respond. Additionally, the caseworker testified that, even if there was an available relative, the child needed the permanency of adoption. And the caseworker testified about her concerns that if a less drastic alternative was granted, mother could cause disruption in the child's placement as she had a history of making serious and unsubstantiated accusations against the child's caregivers.

¶ 32 Because the record supports the court's finding that termination, and not a less drastic alternative, was in the child's best interests, we cannot disturb it. *See A.M.*, ¶ 32; *B.H.*, ¶ 80.

### III. Disposition

¶ 33 The judgment is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.