25CA0931 Peo in Interest of AH 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0931
Chaffee County District Court No. 24JV3
Honorable Dayna Vise, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.H., a Child,

and Concerning M.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Karl Hanlon, Interim County Attorney, Julie Thomerson, Special Assistant County Attorney, Salida, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, M.H. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with A.H. (the child).  We affirm.

## I.     Background

¶ 2     In September 2023, the Denver County Department of Human Services filed a petition in dependency and neglect regarding the newborn child.  The petition alleged, among other things, that the child tested positive for illicit substances at birth and experienced symptoms of withdrawal, that the family was living out of their car, and that father had admitted to using illicit substances.  The child was placed with maternal grandmother, where he remained throughout the case.  The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for father.

¶ 3     In April 2024, the case was transferred to Chaffee County and the Chaffee County Department of Human Services (Department) assumed control of the case.

¶ 4     The guardian ad litem later moved to terminate the parents' parental rights.  After an evidentiary hearing, the court granted the motion.  Father appeals.

## II.    Applicable Law and Standard of Review

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent did not comply with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 6    A juvenile court's judgment terminating parental rights presents a mixed question of fact and law involving the application of the termination statute to the evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  The credibility of the witnesses and the sufficiency, probative value, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion.  *Id.*  We review the juvenile court's factual findings for clear error and will set them aside only if they lack any support in the record.  *Id.* at ¶¶ 15, 48; *see People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.  We review de novo the

juvenile court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### III. Fit Within a Reasonable Time

¶ 7 Father contends that the juvenile court erred by finding that he was unlikely to become fit within a reasonable time because, even though father had relapsed, he was "seeking treatment and support to maintain his sobriety, and, with that support, there was a reasonable likelihood that he would be able to substantially comply with his treatment plan and become fit within a reasonable period of time." We are not persuaded.

### A. Applicable Law

¶ 8 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental conditions and needs. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A juvenile court can also consider a parent's noncompliance with a treatment

plan in determining unfitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 9 When determining whether a parent's conduct or condition is likely to change within a reasonable time, a juvenile court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *E.S.V. v. People*, 2016 CO 40, ¶ 22. A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the children. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 10 When a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025. In EPP cases, no parent shall be found to be in reasonable compliance with, or have been successful at, a treatment plan when the parent (1) has not attended family time as detailed in the treatment plan,

unless good cause is shown for failing to attend; or (2) exhibits the same problems addressed in the treatment plan without adequate improvement. § 19-3-604(1)(c)(I).

## B. Analysis

¶ 11 The juvenile court determined that father was unfit to parent the child and unlikely to become fit within a reasonable time. The court based this determination of unfitness on, among other things, father's chronic use of intoxicating controlled substances, *see* § 19-3-604(2)(e), a prior dependency and neglect action involving substance use issues that resulted in him losing custody of a different child, his failure to attend family time, and his lack of progress with mental health treatment.

¶ 12 True, the caseworker opined that she would not expect substance use treatment to be linear and agreed that relapse is a part of recovery. But the caseworker also testified that the Department needed to see "ongoing sobriety" and "someone who's committed to being sober for the rest of their lives and managing any relapse appropriately to maintain safety . . . for the child."

¶ 13 Father consistently engaged in substance use treatment for roughly six of the nineteen months the case was open. However, he

relapsed four months before the termination hearing and was discharged from substance use treatment for failure to engage. He tested positive for methamphetamine, amphetamine, fentanyl, and tetrahydrocannabinol two months before the termination hearing and reportedly admitted to illicit substance use just a month before the termination hearing. And while he asserted that he engaged in substance use treatment shortly before the termination hearing, he provided no evidence of this to the Department and admitted to voluntarily leaving the program after four-and-a-half days.

¶ 14 The caseworker further opined that she did not believe father's conduct or condition was likely to change within a reasonable time given his "continued use, lack of compliance with the treatment plan, [and] lack of involvement in the case." The record shows that at the time of the termination hearing, father had obtained new criminal charges related to substance use, was not engaging in substance use or mental health treatment, and was not attending family time. *See* § 19-3-604(1)(c)(I).

¶ 15 Because the record supports the court's determination that father was unlikely to become fit within a reasonable time, we decline to disturb the judgment. *See S.Z.S.*, ¶ 29 (appellate court

will not disturb the juvenile court's finding that a parent could not become fit within a reasonable time when the record supports it).

IV.   Less Drastic Alternative

¶ 16    Father asserts that the juvenile court erred by finding that there was no less drastic alternative to termination. Specifically, he contends that the court erred because (1) the child was bonded to him, so a continued relationship was in the child's best interests; and (2) grandmother was willing to accept an allocation of parental responsibilities (APR). We reject father's contentions.

A.   Applicable Law

¶ 17    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). The court may consider, among other things, whether (1) an ongoing relationship between the parent and child would be beneficial, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) an APR provides adequate permanence and stability for the child, *People in Interest of T.E.M.*,

7

124 P.3d 905, 910-11 (Colo. App. 2005); and (3) the placement prefers adoption over an APR, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 18    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, it must be in the child's best interests. *A.M.*, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds that termination is still in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings enjoy record support. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

### B.    Analysis

¶ 19    The juvenile court considered whether an APR to grandmother was a viable less drastic alternative to termination but determined it would not be in the child's best interests. The court found that termination "will ensure that the child, who is almost two years old now, has the stability and permanency in the only home he has ever known — with [grandmother]." The record supports this finding.

¶ 20    The caseworker testified that she believed father had not maintained a bond with the child. She further opined that she did not believe an APR was in the child's best interests and that, especially given the child's age, did not "believe an APR is sufficient to provide the . . . permanency . . . and the sense of belonging" required to meet the child's needs. She noted that the child had been with his grandmother his entire life and that "[t]hey're obviously very bonded."

¶ 21    The record shows that father's family time was inconsistent throughout the case. When the case was transferred to Chaffee County, father refused all family time with the child because he did not want his family time supervised by the Department. Father was reportedly discharged from at least two family-time agencies for failing to attend scheduled visits. While he later had periods of consistent attendance, at the time of termination he had seen the child "[m]aybe once" in the last four to six months. Additionally, as noted above, father had not successfully complied with his treatment plan and concerns about his substance use, mental health, and criminal activity remained.

¶ 22    Lastly, while it is true that grandmother said she would accept an APR "if it was the only option," she also testified that she believed an APR was not in the child's best interests, that the child needed permanency, and that she preferred to adopt the child. *See S.N-V.*, 300 P.3d at 920.

¶ 23    Accordingly, we conclude that the juvenile court did not err by finding that termination, rather than an APR, was in the child's best interests. *B.H.*, ¶ 80.

## V.    Disposition

¶ 24    The judgment is affirmed.

JUDGE FOX and JUDGE MEIRINK concur.