24CA1401 Peo in Interest of DM 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1401
Weld County District Court No. 21JV607
Honorable Anita Crowther, Judge

The People of the State of Colorado,

Appellee,

In the Interest of T.M. and D.M., Children,

and Concerning R.M., n/k/a R.K.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     R.M., now known as R.K., (mother) appeals the judgment terminating her parent-child legal relationships with T.M. and D.M. (the children).  We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services (the Department) filed a petition in dependency or neglect due to concerns about mother's mental health, domestic violence between mother and her partner, and mother's partner's use of illicit substances.

¶ 3     The juvenile court adjudicated the children dependent and neglected.  The court adopted a treatment plan for mother, which required her, among other things, to address her mental health, learn appropriate parenting skills, and address domestic violence concerns.

¶ 4     Shortly after the adoption of her treatment plan, mother filed a notice of her application under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 to -12213, asserting that she had anxiety, depression, post-traumatic stress disorder (PTSD), and avoidant, dependent, and obsessive-compulsive personality traits. Mother did not request any accommodations or modifications to her

1

treatment plan related to those diagnoses at that time; rather, she noted that "should [she] require any accommodations or modifications, [her] counsel will confer with [opposing] counsel" and then filed a motion with the court.

¶ 5	The Department later moved to terminate mother's parental rights. Six months after the original termination hearing date, and following mother's second request for a continuance, mother filed a motion asking the court to modify her treatment plan to require her to complete a neuropsychological evaluation and to order the Department to make appropriate referrals for that assessment. The court denied mother's motion. After a third and final continuance of the termination hearing, the court held a three-day evidentiary hearing. At the conclusion of the hearing, the court granted the Department's motion and terminated mother's parental rights.

## II.    Criteria for Termination of Parental Rights

¶ 6	A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent didn't comply with, or wasn't successfully rehabilitated by, an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the

parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 7 Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 8 When, as is the case here, a child is under six years old at the time the petition in dependency and neglect is filed, the juvenile court must consider the expedited permanency planning (EPP) provisions, which require that such children be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25.

¶ 9 The credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn therefrom, are all matters within the province of the juvenile court; thus, we won't disturb findings on

these issues unless they are clearly erroneous, in that they find no support in the record. *People in Interest of S.N-V.*, 300 P.3d 911, 912 (Colo. App. 2011). But determining the proper legal standard to apply in a case and applying that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

### III. Mother's Arguments

¶ 10 Mother contends that the juvenile court erred in finding that (1) her treatment plan was appropriate; and (2) the Department made reasonable efforts to rehabilitate her. She largely bases both contentions on the Department's alleged failures to accommodate her disabilities under the ADA.

### A. Preservation and Merits

¶ 11 On appeal, the Department asserts that mother's arguments regarding the ADA were not preserved because she never informed the court or the Department what accommodations were necessary for her disabilities. The Department further argues that mother's ADA arguments fail on the merits because her conditions do not limit her "major life activities" and, therefore, she is not a "qualified

individual with a disability" under the ADA. 42 U.S.C. § 12102(1)(A), (2)(A).

¶ 12  We need not reach these issues, however, because, as we discuss below, even applying the ADA, we perceive no error.

### B.  Appropriate Treatment Plan

¶ 13  Mother contends that the juvenile court erred when it concluded that her treatment plan was appropriate because it neither (1) addressed necessary accommodations for her disabilities nor (2) included a neuropsychological evaluation and any recommended services that may arise from such an evaluation. We disagree.

### 1.  Relevant Law

¶ 14  An appropriate treatment plan is one "that is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19-1-103(12), C.R.S. 2024. The appropriateness of a treatment plan is measured by its likelihood of success in reuniting the family, and it must be assessed in light of the facts existing at the time of its approval. *See People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

¶ 15    When a parent is a "qualified individual with a disability," the Department's treatment plan services must also meet the requirements of the ADA.  *See* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability"); § 19-3-208(2)(g), C.R.S. 2024.  A parent who is a "qualified individual with a disability" is responsible for disclosing to the Department and the juvenile court information about her disabilities so that the Department can provide appropriate treatment plan services; likewise, such a parent must identify any modifications she believes are necessary to accommodate her.  *People in Interest of S.K.*, 2019 COA 36, ¶ 21.  "A parent who waits until the eleventh hour to request a modification under the ADA may thoroughly undermine her ability to establish that such modification is reasonable, particularly once the best interests of the child are taken into account."  *S.Z.S.*, ¶ 16 (citation omitted).

### 2.    Analysis

¶ 16    The juvenile court found that mother's treatment plan was reasonable and appropriate, but that she had reasonably or successfully complied with it.  The court noted that mother's ADA notice did not include any modifications she believed were

necessary to accommodate her. Nevertheless, the court concluded the Department did make reasonable accommodations for mother throughout the case.

¶ 17    The court found, with record support, that the caseworker (1) utilized trauma-informed practices; (2) set up weekly phone calls with mother when she requested them; (3) brought in a nurse to help mother understand the children's medical needs and what happened at appointments; (4) allowed mother to take breaks from, and bring support people into, meetings; (5) rescheduled and moved the location of meetings and family time at mother's request; (6) provided mother with reminders for appointments; (7) routinely reviewed with mother what she needed to be working on; and (8) printed out or wrote down necessary information for her, including detailed instructions involving her treatment plan.

¶ 18    True, the treatment plan did not specifically detail mother's diagnoses and how her conditions would be addressed in the treatment plan. However, it does not appear from the record that she ever requested any modifications or accommodations specific to the diagnoses she identified in her notice, in addition to the accommodations the Department provided to her. *See S.K.*, ¶ 21.

Notably, on appeal, mother describes no additional modifications or accommodations, other than a neuropsychological evaluation, that could have helped her comply with the treatment plan.

¶ 19    Mother appears to assert that, based on her expert's opinion, she *may* have a cognitive or intellectual disability.  Mother's expert opined that a neuropsychological exam could reveal whether mother had a cognitive or intellectual disability.  But the court had previously found — and reaffirmed at the termination hearing after considering the Department's and mother's experts' testimony and reports — that a neuropsychological evaluation was not warranted.

¶ 20    The Department referred mother for a psychological evaluation at the beginning of the case.  The provider who conducted the evaluation opined that mother lived with depression and anxiety and recommended that she continue to engage in individual therapy but concluded that she was in the average range of intelligence.

¶ 21    Later, mother retained her own expert, who believed that mother needed a neuropsychological evaluation to determine whether there was "any interference with her comprehending instructions."  In response, the Department made a referral for a

second psychological evaluation that included adaptive functioning testing. The second evaluator concluded that, "[d]ue to a lower-than-expected score profile from her cognitive abilities test, intellectual disability and learning disorder were considered but ruled out," and "[t]herefore, further psychological testing to confirm these rule-outs is not indicated." Given these results, the Department declined to seek a neuropsychological evaluation for mother.

¶ 22    At the termination hearing, mother's first evaluator, a licensed psychologist who had a doctoral degree in clinical psychology, testified that, based on his evaluation of mother, he did not have any concerns about her ability to understand and comply with her treatment plan.

¶ 23    In sum, although mother argues a neuropsychological evaluation could have determined whether she had a cognitive or intellectual disability, the Department introduced expert opinions that she did not require additional testing to determine whether she might have other disabilities. The juvenile court's ruling reflects that it weighed the conflicting evidence, and having done so, determined the evaluations the Department provided to mother

were sufficient.  We see no reason to disturb the court's ruling.  *See S.N-V.*, 300 P.3d at 912.

## C.    Reasonable Efforts

¶ 24    Mother also contends that the Department did not make reasonable efforts to rehabilitate her because it did not provide (1) necessary ADA accommodations; (2) services when she lost Medicaid coverage; or (3) services necessary for her to complete her treatment plan.  We discern no error.

### 1.    Relevant Law

¶ 25    A department of human services must make reasonable efforts to rehabilitate the parent and reunite the parent with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h).  The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208.  § 19-1-103(114).  Section 19-3-208 requires a department to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

10

¶ 26    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department has made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 27    The ADA does not provide a defense to the termination of parental rights. *People in Interest of T.B.*, 12 P.3d 1221, 1223 (Colo. App. 2000). Nonetheless, a department of human services has an affirmative duty under the ADA to make reasonable accommodations for a parent with a qualifying disability when providing rehabilitative services. *S.K.*, ¶¶ 25, 34. Therefore, when determining whether the department made reasonable efforts, the

11

juvenile court must consider whether the department made reasonable accommodations for the parent's disability. *Id.* at ¶ 34; *see also* § 19-3-208(2)(g) (requiring rehabilitative services to comply with the ADA's provisions).

¶ 28 Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination that the Department satisfied the reasonable efforts requirement. *Id.*

## 2. Analysis

¶ 29 The juvenile court found that there was "substantial evidence" that the Department made reasonable efforts through "a multitude of different services for [mother]" but "she failed to properly engage with them, or in some cases refuse[d] them outright."

¶ 30 Mother's arguments rely largely on her general assertion that she was not provided proper ADA accommodations or a neuropsychological evaluation, which we have addressed and rejected above.

¶ 31   Mother also asserts the Department failed to accommodate her PTSD by failing to change the family time location to allow her to avoid driving on the highway. Contrarily, the record shows that every time mother requested to change the location of her family time — around ten times — the caseworker accommodated her request. Nonetheless, she missed about half of her visits throughout the case. The caseworker testified she worked to get mother's parent advocate approved to attend family time so that the advocate could transport mother, but mother never set up appointments to allow the advocate to do so.

¶ 32   Next, mother contends the Department failed to provide reasonable efforts when it failed to provide services after she lost her Medicaid coverage. But mother fails to specify what services should have been provided. *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development . . . ."). Regardless, the caseworker testified she helped mother reapply for Medicaid, worked with mother's life skills provider to find alternative insurance, and tried to set mother up with sliding scale payments for mental health treatment. The Department also

offered mother financial assistance to cover the cost of other bills to offset the cost of therapy.

¶ 33 Lastly, mother asserts the Department failed to provide the "minimum services the government was required to provide," but fails to describe what those services might be. And the record contradicts mother's argument. In addition to the accommodations described above, the Department provided a substance abuse and mental health evaluation, sobriety monitoring, supervised family time, four referrals for parent coaching, virtual and in-person parent educators, two parent-child interactional assessments, domestic violence victim support services, individual therapy, group therapy, a life skills provider, and housing assistance. Mother largely failed to engage in or complete the majority of the offered services that her treatment plan required. *A.V.*, ¶ 12.

¶ 34 Therefore, we discern no error in the juvenile court's conclusion that the Department made reasonable efforts.

IV. Disposition

¶ 35 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.